UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

JAMES WATSON,

     Plaintiff,

v.

COLUMBIA FOOD SERVICE
COMPANY, INC. d/b/a COLUMBIA
RESTAURANT GROUP

     Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

     Plaintiff James Watson ("Plaintiff") hereby sues Defendant Columbia Food Service Company, Inc. doing business as Columbia Restaurant Group ("Defendant"), a Florida for profit corporation, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

     1.    Venue lies in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.04, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

     2.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been

given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

3.    Plaintiff is a Florida resident, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is legally blind and a member of a protected class under the ADA 42 U.S.C. §12102(1) & (2), the regulations implementing the ADA as set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

4.    Plaintiff uses the internet and a mobile device to help him navigate a world of goods, products and services like sighted individuals. The internet, websites and mobile applications provide him a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a mobile website (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

5.    Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he

monitors mobile websites to ensure and determine whether places of public accommodation and/or their mobile websites are in compliance with the ADA.

6.     On information and belief, Defendant owns and operates (either directly or indirectly through brother-sister entities or subsidiaries) places of public accommodation which are restaurants specializing in serving Columbian style food. These restaurants are branded as "Columbia Restaurant" or "Columbia Café," each of which is open to the public. As such, each  Columbia Restaurant and Columbia Café is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7) (B), §12182, and 28 C.F.R. §36.104(2). The Columbia Restaurants and Columbia Cafes are referenced throughout as "place(s) of public accommodation," "Columbia Restaurant(s)," or "restaurant(s)."

7.     There are seven Columbia Restaurants within the state of Florida as follows:

- "Columbia Restaurant," located in the Ybor City Historic District, 2117 East 7th Avenue Tampa, Florida 33605 (owned by Columbia Operating Co.);

- "Columbia Café" at the Tampa Bay History Center, located at 801 Water Street, Tampa, Florida 33602 (owned by Café Columbia Inc.);

- "Columbia Café" located in the  Tampa International Airport, 4100

George J Bean Parkway, Terminal E, Tampa, Florida 33607 (owned by HSI TBL TPA FB, LLC);

- "Columbia Restaurant" located at St. Armands Circle, with address of 411 St. Armands Circle, Sarasota, Florida 34236 (owned by Columbia Restaurant of Sarasota Inc.);

- "Columbia Restaurant" located in the St Augustine Historic District, specifically at 98 St George Street, St. Augustine, Florida 32084 (owned by Columbia Restaurant of St Augustine, Inc.);

- "Columbia Restaurant" located at Sand Key, Clearwater Beach, specifically: 1241 Gulf Boulevard, Clearwater, Florida 33767 (owned by Columbia Restaurant Clearwater, Inc.);

- "Columbia Restaurant" located at Celebration, with address of 649 Front Street, Celebration, Florida 34747 (owned by Columbia Restaurant Group)

8.     There are three Columbia Restaurants operating within Hillsborough County that are within this district.

9.     Defendant is the owner of the https://www.columbiarestaurant.com/ mobile website[1]. Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, the https://www.columbiarestaurant.com/ mobile

---

[1] See the privacy section of the mobile website

website (hereinafter "mobile website") for the general public to access on their mobile devices (phones, tablets). This mobile website supports, is an extension of, is in conjunction with, is complementary and supplemental to, the seven Columbia Restaurants. The mobile website delineates the goods, services, accommodations, privileges, benefits and facilities available to patrons at each of the Columbia Restaurant physical locations.

10. The mobile website is offered by Defendant as a way for the public to become familiar with the Columbia Restaurant menu selections, as well as information on hours of operation, restaurant locations, provides a link to reserve a table for dining within each of the restaurant locations, provides links to the Columbia Restaurant Facebook, Twitter and Instagram pages, and provides other information Defendant seeks to communicate to the public.  The mobile website also enables the public/patrons to purchase merchandise (books, kitchen gadgets, and gift baskets), ready-to-mix foods and drinks (paella and sangria mixes), and the ability for the public to purchase gift cards for exclusive use in Columbia Restaurants (and check those gift card balances online). The mobile website also provides menus by location which are specific for pick up from the restaurant physical locations and offers the public the ability to inquire about private space at various of the Columbia Restaurant locations. By the provision of menu selection, reservation services, to-go order selection, and the ability to purchase branded merchandise, the mobile website

is an integral part of the goods and services offered by Defendant on behalf of each of the seven Columbia Restaurants. By this nexus, the mobile website is characterized as a Place of Public Accommodation subject to Title III of the ADA[2], 42 U.S.C. §§ 12181(7)(B) & (E) and 28 C.F.R. §§ 36.104(2) & (5).

11.    As the owner of the https://www.columbiarestaurant.com/ mobile website (which is a Place of Public Accommodation), Defendant is defined as a "Public Accommodation" within meaning of Title III under 42 U.S.C. §§ 12181(7)(B) & (E) and 28 C.F.R. §§ 36.104(2) & (5).

12.    Defendant's mobile website allows mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their dining choice from their mobile device.  Defendant has subjected itself to the ADA because its mobile website is offered as a tool to promote, advertise and sell its products and services from each of the Columbia Restaurant locations. As a result, Defendant's mobile website must interact with Columbia Restaurants and the public, and in doing so must comply with the ADA, which means it must not

---

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." (See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.[3]

13.    Defendant's mobile website does not properly interact with VoiceOver screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals.

14.    Like the seeing community, Plaintiff would like the opportunity to be able to use Defendant's mobile website to comprehend Columbia Restaurant menu selections and to test for the ability to make reservations, inquire about private events, and to purchase gift cards and merchandise online. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur, Plaintiff will continue to be denied full and equal access to Defendant's mobile website and will be deterred from fully using that mobile website.

15.    Plaintiff is continuously aware of the violations on Defendant's mobile website and is aware that it would be a futile gesture to attempt to utilize the mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

---

[3] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

16.     Defendant and alike restaurants are fully aware of the need to provide full access to all visitors to its mobile website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

17.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is his only means to secure adequate redress from Defendant's discriminatory practice.

18.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

19.     Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

20.     The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the provision of auxiliary aids and services for such purpose.

21.     According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that (VoiceOver) screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

22.     28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

23.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

24.     Defendant's mobile website has been designed to integrate with Columbia Restaurants through the provision of a reservation service, the ability to inquire about private events online and the provision of a store from which to purchase brand merchandise and food/drink mixes as well as gift cards to use within

Columbia Restaurants; therefore, the mobile website is an extension of each Columbia Restaurant (each of which is a Place of Public Accommodation). By and through its mobile website, Defendant extends Columbia Restaurant Places of Public Accommodation into individual persons' homes and portable devices wherever located. The mobile website is a service, facility, privilege, advantage, benefit and accommodation of Columbia Restaurants. As such, Defendant's mobile website is integrated with, and is a nexus to, Columbia Restaurant brick-and-mortar locations. Therefore, it is governed by the following provisions:

      a.    U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

      b.    42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

      c.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be

discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

   d. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

   e. 42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

   f. 42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity

to participate in such programs or activities that are not separate or different."

g.      42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

h.      42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

25.    Plaintiff attempted to access and test Defendant's mobile website, but was unable to do so. Plaintiff continues to be unable to enjoy full and equal access to the mobile website and/or understand the content therein because numerous portions of the mobile website do not interface with mobile VoiceOver screen reader software. Specifically, features of the mobile website that are inaccessible to VoiceOver screen reader software users include, but are not limited to, the following

(citing the WCAG 2.1 Level A and AA Guidelines):

i.    Guideline 1.1.1 Non-Text Content is violated. Text alternatives for non-text content should be provided, and this is not the case. The *Lunch menu* PDF has multiple unlabeled and incorrectly labeled images. For example, the first page has five unlabeled images. This cover page which includes the logo and restaurant name is announced only as "12 Slash 21Sl Y."

ii.   Guideline 1.4.5 Images of Text is violated. The mobile website does not use images of text so that mobile VoiceOver screen reader software users are unable to comprehend. Some images contain content that is not announced. For example, the cover page of the *Dinner Menu* PDF is announced as "row 1 column 1 table start 2 rows 1 column." Because the first item announced is an unlabeled table and the text content is not announced, mobile VoiceOver screen reader software users are unable to ascertain that they are actually on the *Dinner Menu*.

iii.  Guideline 2.4.3 Focus order is violated as the mobile website does not provide focus in a logical order. Some of the menu content in the *Dinner* PDF is not in the focus order and therefore is not announced. For example, when a mobile VoiceOver screen reader software users swipes to the *Don Casimiro wine*, focus moves to the last line in the description. Mobile VoiceOver screen reader software users are unable to swipe to hear any content above the last line (such as the type of wine and the description).

iv.   Guideline 2.5.3 Label In Name is violated; any component that has text or images of text must have an accessible name shown in visible text and this is not the case.  Mobile VoiceOver screen reader software users are unable to make a reservation using the mobile website. For example, each icon in the *Reservation* form receives focus so a mobile VoiceOver screen reader software user must swipe to each icon, but icons are not labeled. For example, the chevron icons are each announced as only "m."

v.    Guideline 4.1.2 Name, Role, Value is violated. All elements must be built for accessibility and this is not the case. Mobile VoiceOver screen reader software users are unable to make a reservation. The OpenTable form is the only means available for mobile VoiceOver screen reader software users to make a reservation, and this is not accessible. For example, while focus moves into the *date* popup when it is displayed, after the *month* is announced, focus moves back to the underlying page. Instead of hearing the available dates for

a reservation, the mobile VoiceOver screen reader software user hears the *time* button and other elements that are not shown in the *date* popup, and the mobile VoiceOver screen reader software user is unable to swipe to hear (reservation) dates.

26.     In this instant case, Defendant's mobile website reservation system and the merchandise store are both linked to third party vendors. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to third party vendor platforms does not absolve Defendant of culpability.  Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

27.     As the owner and/or operator of the mobile website which exclusively serves as a gateway to Columbia Restaurants (for purchasing food and merchandise), Defendant is required to comply with the ADA and the provisions cited above. This

includes Defendant's obligation to create and maintain a mobile website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the mobile website and the content therein, including the ability to make a reservation to dine within the Columbia Restaurant locations and to purchase merchandise, food and drink mixes, and gift cards online and have those purchases delivered to their homes.

28.     With respect to its mobile website, Defendant has violated the ADA by failing to interface its mobile website with VoiceOver screen reader software utilized by visually impaired individuals (as specifically delineated within paragraph 25) either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff accommodation on the basis of his disability:

a.      by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

b.      in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

c.      in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that

is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

        d.    by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

        e.    by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

        f.    notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

        g.    by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

h.      by a failure to take such steps as may be necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. §12182(b)(2)(iii)).

29.     Plaintiff is continuously aware of the violations within Defendant's mobile website and is aware that it would be a futile gesture to attempt to utilize and/or test the mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

30.     Plaintiff is well aware that the ADA requires effective communications. However, long after the required date of compliance, many public accommodations refuse to comply leaving Plaintiff feeling excluded and rejected because he is disabled.  As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within Defendant's mobile website. By continuing to operate its mobile website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering

the discriminatory conditions within Defendant's mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website unless he is willing to endure additional discrimination, Plaintiff is deprived of utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a mobile website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

31.    Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA and conform its mobile website to WCAG 2.1 Level A and AA Guidelines.

32.    Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to its mobile website. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant when he visits the mobile website to test for compliance with the ADA. Plaintiff desires to access the mobile website to assure himself that the mobile website is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

33.    Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm. The Plaintiff and all others similarly situated

will continue to suffer such discrimination, injury and damage without the immediate relief as requested herein.

34.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its mobile website to make it readily accessible to and usable by Plaintiff and other persons with vision impairments.

**WHEREFORE,** Plaintiff James Watson hereby demands judgment against Defendant Columbia Food Service Company, Inc. and requests the following injunctive and declaratory relief:

a.    The Court issue a Declaratory Judgment that determines that Defendant's mobile website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.;

b.    The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its mobile website to ensure that it is readily accessible to and usable by persons with vision impairment;

c.    The Court issue an Order directing Defendant to alter its mobile website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

d.    The Court issue an Order directing Defendant provide the appropriate

auxiliary aids such that individuals with visual impairments will be able to effectively communicate with Defendant's mobile website for purposes of comprehending Columbia Restaurant menu selections, ordering/paying for merchandise and gift cards, for making reservations to dine within each of the seven Columbia Restaurants, and for inquiring about space for private dining events, and during that time period prior to the mobile website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so that disabled individuals are not impeded from obtaining the goods and services made available to the public through Defendant's mobile website.

e.   The Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f.   The Court enter an Order directing Defendant to continually update and maintain its mobile website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.   The Court award attorney's fees, costs and litigation expenses pursuant

to 42 U.S.C. § 12205; and,

h.      The Court provide such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Dated: June 22, 2022

Respectfully submitted,

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
FBN: 628166
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
Telephone:  305-351-2014
Email: cc@cunninghampllc.com
*Counsel for Plaintiff*